# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

RAPHAEL J. MUSTO,

    Defendant.

CIVIL ACTION NO. 3:10-CR-338

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are a number of pretrial motions filed by defendant Musto. (Docs. 19, 21, 23, 25, 27, 29, and 31.) Each motion has been fully briefed and is ripe for review.

## BACKGROUND

On March 16, 2010, a federal Grand Jury returned a six (6) count indictment charging defendant with violations of 18 U.S.C. § § 1343, 1346, and 2 (Count I), 18 U.S.C. § § 1341, 1346, and 2 (Count II), 18 U.S.C. § 666(a)(1)(B) (Counts III and IV), and 18 U.S.C. § 1001 (Counts V and VI).

All of the charges in the indictment stem from defendant's position as a Pennsylvania state senator representing the 14th Senatorial District. The indictment alleges that, beginning in 2005, defendant received financial remuneration for helping to steer contracts to an unnamed construction company, "Company A." Defendant allegedly received gift baskets containing electronics and other items from 2005 to 2007 from "Company A" that were of such value that defendant was legally obligated to disclose them. In addition, after contracting with "Company A" to perform work on a property he owned for forty-seven thousand nine-hundred dollars ($47,900.00) in July 2006, defendant allegedly received a

payment of twenty-five thousand dollars ($25,000) in cash so that it would appear defendant paid full price for the work when in fact he received a steep discount. Then, in July 2007, "Company A" did approximately ten-thousand dollars ($10,000.00) of additional repairs to the property without billing or receiving compensation from defendant.  In consideration for these financial benefits, defendant used his position as a Pennsylvania state senator to advocate for and advance projects beneficial to "Company A."  This advocacy included writing to state government agencies asking them to award grants to "Company A" for a multi-million dollar construction project in Lackawanna and Luzerne counties.  Defendant also allegedly attempted to conceal his financial relationship with "Company A" by filing false annual statements of his financial interests.

In February 2010, "Company A" disclosed to the federal government the payment of twenty-five thousand dollars ($25,000) cash to the defendant, the additional repair work, and the gift baskets. On February 24, 2010, a representative from "Company A", Lewis Sebia, agreed to record a conversation with defendant regarding these matters.  The conversation was recorded at defendant's home.  Federal investigators then used their discussions with "Company A"'s owner, Robert Mericle, and Sebia, as well as the recorded conversation, as the basis of their search warrant affidavit.  On April 6, 2010, federal law enforcement officers obtained and executed  a search warrant for defendant's residence.

Defendant pled not guilty to all charges at his December 15, 2010 arraignment and then filed several pretrial motions. These motions include: motion to strike surplusage and unnecessary, prejudicial portions of the indictment (Doc. 19); motion for hearing on the accuracy of transcript of recorded conversation (Doc. 21); motion for discovery and inspection of physical evidence and *Brady* material (Doc. 23); motion to suppress (Doc. 25);

motion to produce and preserve notes, reports, and evidence (Doc. 27); motion for a Bill of Particulars (Doc. 29); and a motion for disclosure of statements pursuant to the *Jencks* Act and Federal Rule of Criminal Procedure 26.2 (Doc. 31).

## **DISCUSSION**

### I.      **Motion to Strike (Doc. 19)**

Defendant's motion to strike paragraphs four through six of the indictment will be denied. Counts one and two of the indictment allege Honest Services Wire Fraud and Honest Services Mail Fraud and Mail Fraud under 18 U.S.C. § §1341, 1343, and 1346, while paragraphs four through six deal exclusively with Pennsylvania laws concerning campaign contributions and the actions of public officials. Defendant claims these paragraphs are misleading and prejudicial because defendant is not charged with violating these state laws and their inclusion in the indictment will lead the jury to believe that they can find defendant guilty if they conclude he has violated Pennsylvania law. The prosecution argues these paragraphs are necessary as they provide elements of the honest services fraud charges.

Pursuant to Fed. R. Crim. P. 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." "The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment." *United States v. Alsugair*, 256 F.Supp.2d 306, 317 (D.N.J. 2003). A Rule 7(d) motion is "rarely granted" as it must be ". . . clear that the allegations contained therein are not relevant to the charge made or contain inflammatory or prejudicial matter." *Id.*

> The federal wire fraud statute provides, in relevant part:
>
> Whoever, having devised ... any scheme ... to defraud, ... transmits ... by means of wire ... in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1343. Section 1346 of Title 18 elaborates on the meaning of "scheme to defraud," stating that "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

Recently, in holding that the honest services statute, 18 U.S.C. § 1346, covers only bribery and kickback schemes, the United States Supreme Court found, "[t]he 'vast majority' of the honest-services cases involved offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." 130 S.Ct. 2896, 2930 (2010) (emphasis added). Here, the prosecution essentially argues that the references to the Pennsylvania statutes are necessary to explicate what the fiduciary duties defendant allegedly breached were. The Court agrees, and paragraphs four through six of the indictment will not be stricken.

## II. Motion for a Hearing on Accuracy of Transcripts of Recorded Conversation (Doc. 21)

Defendant requests a hearing to determine the most accurate version of the transcript of the recorded conversation between "Company A"'s representative and defendant pursuant to *United States v. Starks*, 515 F.2d (3d Cir. 1975). Because this Court, as a general practice, does not allow these transcripts to be admitted into evidence, the motion will be dismissed as moot.

4

**III.    Motion for Discovery and Inspection of Physical Evidence and *Brady* Material (Doc. 23)**

Defendant's motion for discovery and inspection of physical evidence and *Brady* material will be granted in part and denied in part. Defendant requests release of the following materials no later than thirty (30) days prior to the commencement of trial: (1) the pre-trial discovery pursuant to Fed. R. Crim. P. 16, along with certification from the prosecution that inquiry was made to all law enforcement authorities involved regarding the requested evidence, as well as a certification that the prosecution has complied with the requirements outlined in Deputy Attorney General David Ogden's memorandum entitled, "Guidance for Prosecutors Regarding Criminal Discovery; (2) all *Brady\Giglio* material in the prosecution's possession; (3) any statements made by defendant's agents pursuant to Fed. R. Crim. P. 16(a)(1)(A); and (4) the grand jury testimony of Robert Mericle and Lewis Sebia.

The prosecution argues that it has complied and continues to comply with the requirements of Fed. R. Crim. P. 16, but that Fed. R. Crim. P. 16(a)(2) specifically excludes from pretrial discovery "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," as well as, "statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Further, under 18 U.S.C. § 3500(a), the government is only required to turn over *Jencks* material *after* the government witnesses' direct examination. The prosecution also argues that defendant has not pointed to any authority for the proposition that he is entitled to the requested certifications. The Court agrees with these points and will deny the requested certifications as well as the release of any evidence excluded under Rule 16(a)(2). However, the Court

will order the prosecution to release any *Jencks* material no later than seven (7) days before the start of trial.

Regarding the *Brady\Giglio* material, in *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court subsequently held that evidence which may be used to impeach the testimony of a government witness falls within the ambit of *Brady* when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The so-called *Brady* doctrine generally is understood as a rule of minimum fairness. *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir.1983), *cert. denied*, 464 U.S. 1048 (1984). It establishes an obligation on the part of the prosecution rather than a general rule of pretrial discovery. The government thus has an obligation to produce favorable material bearing on a defendant's culpability or punishment as well as material bearing on the credibility of any witness who will be used to establish material matters at trial. This obligation is not to be used, however, to permit a defendant to obtain wholesale discovery of the government's principal case. *See Higgs*, 713 F.2d at 42.

It is well-established that the government's obligations under *Brady* require it to disclose actual exculpatory evidence without undue delay. *Brady* impeachment material ordinarily must be disclosed "in time for its effective use at trial." *Higgs*, 713 F.3d at 44.  A district court has general discretionary authority to order the pretrial disclosure of *Brady* impeachment material, and that discretion is to be exercised in a manner which "ensure[s]

6

the effective administration of the criminal justice system." *Gov't of Virgin Islands v. Martinez*, 847 F.2d 125, 127 (3d Cir.1988).  Here, in the interest of fairness and to prevent undue delay, the Court will order the prosecution to release any *Brady\Giglio* material no later than seven (7) days before the commencement of trial.

Regarding release of the agency and adoptive statements attributed to the defendant pursuant to Fed. R. Crim. P. 16(a)(1)(A), the prosecution argues that, because defendant is being charged in his individual capacity, the case law regarding defendant's access to agency and adoptive statements, specifically, *United States v. Bainbridge Mgmt., Inc.*, 01-CR-4691-1, 2002 U.S. Dist. LEXIS 6309 (N.D. Ill. April 11, 2002), is inapposite.  The Court agrees, and this part of the motion will be denied.

As for release of the grand jury testimony, it is long-established that the proceedings of the grand jury must be secret for it to function properly. *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979). However, this need for secrecy must give way to the disclosure to a private litigant when "without the transcript a defense would be greatly prejudiced or that without references to it an injustice would be done." *U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).  Release of grand jury transcripts are guided by the "particularized need" standard. *Dennis v. U.S.*, 384 U.S. 855 (1966).  More specifically, under Fed. R. Crim. P. 6(e), parties seeking grand jury transcripts must show (1) that the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that their request is structured to cover only material so needed. *Douglas Oil Co.*, 441 U.S. at 222.  "The typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the

like'. Such use is necessary to avoid misleading the trier of fact. " *Id.* at 222, n. 12 (internal citation omitted). Here, defendant argues that he is entitled to the grand jury transcripts of Messrs. Mericle and Sebia in order to attack Mericle's credibility and\or impeach Mericle on cross-examination regarding Mericle's initial lack of candor with investigators in a similar but unrelated incident. However, defendant has failed to make a similar showing with respect to Sebia. Therefore, the Court will order the release of Mericle's grand jury testimony but not Sebia's. Sebia's grand jury testimony will be released, along with all other *Jencks* material, no later than seven (7) days before the start of trial.

**IV.    Motion to Suppress Evidence (Doc. 25)**

Defendant's motion to suppress evidence recovered during the execution of the search warrant at his residence will be denied. Defendant's motion is based on three arguments: (1) the search warrant was not supported by probable cause, as it was based on an unreliable witness and stale information that did not demonstrate that the proceeds of the crime would be found in the defendant's home; (2) the search warrant was overly broad; and (3) the consent search performed on defendant's vehicle was illegal because it occurred during the execution of an improper search warrant.

**A.    Lack of Probable Cause**

A district court exercises only a deferential view of the initial probable cause determination made by the magistrate, *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), to determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238.

First, to succeed in a challenge to a warrant affidavit, the defendant must show, by a preponderance of the evidence, that the affiant "knowingly and deliberately, or with a

reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and that "such statements and omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir.2000). Further, "[t]o determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789.

Here, the misstatements and omissions highlighted by defendant were not material to the finding of probable cause. The affidavit was based essentially on interviews with the owner of "Company A", Robert Mericle, and the recorded conversation between "Company A" representative Lewis Sebia and the defendant on March 17, 2010. Defendant argues that the affidavit failed to disclose that Mericle had perjured himself in another, unrelated case by initially providing false information to investigators regarding payments to public officials, as well as contradictions in Mericle's and Sebia's statements as to whose idea it initially was to give defendant the twenty-five thousand dollars ($25,000) cash. Defendant also argues that the recorded conversation fails to support the government's theory that defendant illicitly received the twenty-five thousand dollars ($25,000) cash from "Company A." However, even with the hypothetical addition of the omitted facts, the "corrected" warrant affidavit would still be sufficient to establish probable cause. Further, reviewing the transcript of the recorded conversation provided by defendant, it appears to offer a sound basis for probable cause. Nowhere on the recording, when repeatedly asked about the twenty-five thousand dollars ($25,000) does defendant ask Sebia what money he is referring to or what he is talking about. Instead, defendant walked Sebia down to the

9

computer in his basement and showed him that the money was never deposited in defendant's bank account, allowing the inference that he was assuring Sebia that no paper trail existed. While a transcript was not attached to the affidavit, the prosecution states that the essence of the conversation was conveyed.

Second, regarding staleness, in *United States v. Harvey*, the Third Circuit explained:

> [a]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant." Rather, we must also examine the *nature* of the crime and the *type* of evidence.

2 F.3d 1318, 1321 (3d Cir.1993) (emphasis added).

Here, the information underlying the warrant affidavit was not stale. Although the alleged twenty-five thousand dollar ($25,000) cash payment took place in 2006, and the gift baskets were not received after 2007, there was still probable cause that evidence regarding the cash payment and the gifts would still be at defendant's residence. Business documents are frequently retained for several years. Further, the gift baskets defendant allegedly received contained electronic devices and other non-perishable items that defendant could still have been using several years after receiving them.

**B.     Unconstitutionally Overly Broad Search Warrant**

The Fourth Amendment provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The particularity requirement 'makes general searches ... impossible.'" *United States v. Christine*, 687 F.2d

749, 752 (3d Cir.1982) (internal citation omitted). A general warrant authorizes "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). In order for a warrant to be invalidated as general, it must "vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence." *Christine*, 687 F.2d at 753. In contrast, an overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized," but it authorizes the seizure of items as to which there is no probable cause. *Christine*, 687 F.2d at 753-54.

Here, while using some language indicating that the warrant should be invalidated as general, defendant's main argument appears to be that the warrant was overly broad because there was not probable cause to search the entire house. Defendant argues that the warrant should have been limited to his basement office and computer, as that is where the recorded conversation between defendant and Mr. Sebia took place. However, the warrant affidavit established that not only evidence regarding the 2006 cash payment, but also evidence of the additional construction work done to defendant's property, and the gift baskets, would be found at the residence. Therefore, the warrant was not overly broad in authorizing the search of the entire house.

### C.   Consensual Search of Defendant's Car

Because the Court finds that the search warrant was valid, the consensual search of defendant's car which took place during the execution of the search warrant was also valid, and the Court will therefore not address defendant's "fruit of the poisonous tree" argument.

## V. Motion to Preserve and Produce Notes, Reports, and Evidence (Doc. 27)

The prosecution states that it will comply with defendant's request regarding the preservation of the rough notes and reports made by government law enforcement agents as part of the investigation and therefore an order from the Court is unnecessary. The Court will only add that all *Giglio\Jencks* materials are to be provided the defendant no later than seven (7) days prior to the start of trial.

## VI. Motion for a Bill of Particulars (Doc. 29)

Defendant's motion for a bill of particulars will be denied.

The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir.1971) (internal citation omitted). Fed. R. Crim. P. 7(f) allows a court to direct the filing of a bill of particulars. In determining whether to grant a bill of particulars, a trial court must strike a "prudent balance" between the defendant's interests in securing information and the government's interests in not committing itself to facts before it is in a position to do so. *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989). "A bill of particulars is not intended to provide the defendant with the fruit of the government's investigation, but is instead intended to provide the defendant with the minimum amount of information necessary to permit the defendant to conduct his own defense." *United States v. Serafini*, 7 F.Supp.2d 529, 547 (M.D.Pa.1998) (citing *United States v. Smith*, 776 F.2d 1104 (3d Cir.1985)). "In ascertaining whether a bill of particulars is appropriate, the court may consider not only the indictment, but also all the information that has been made available to the defendant." *United States v. Fischbach &*

*Moore, Inc.*, 576 F.Supp. 1384, 1389 (W.D.Pa.1989) (internal citation omitted).

Here, Defendant claims a bill of particulars is warranted because the indictment: (1) fails to specify the "official action" taken by defendant as part of his alleged scheme to defraud the citizens of Pennsylvania in count one; (2) fails to specify the jurisdictional elements of 18 U.S.C. § 666 in count three; (3) fails throughout to provide precise dates and places of alleged events; and (4) fails throughout to identify co-conspirators and participants in alleged offenses.  The Court finds that a bill of particulars is not warranted.  As to (1), (3), and (4), this information has been provided by the prosecution in their brief opposing defendant's motion.  As to (2), this information is beyond the scope of a bill of particulars.  Therefore, the motion will be denied.

## VII.    Motion for Early Disclosure of *Jencks* Material (Doc. 31)

Defendant requests release of all *Jencks* material no later than thirty (30) days prior to the start of trial.  The prosecution states that it is not required to turn over this material until after the relevant witness has given direct testimony, but will provide this material no later than the Friday before trial, presupposing the trial would start on a Monday.  As a compromise and in the interest of fairness, as discussed above, the Court will order this material to be released no later than seven (7) days prior to the start of trial.

## CONCLUSION

For the foregoing reasons, Defendants' pretrial motions will be granted in part and denied in part.  An appropriate order follows.

| | |
|---|---|
| 5/24/11 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

CIVIL ACTION NO. 3:10-CR-338

v.

(JUDGE CAPUTO)

RAPHAEL J. MUSTO,

Defendant.

## ORDER

**NOW**, this ___24th___ day of May, 2011, **IT IS HEREBY ORDERED** that Defendant's pretrial motions are **GRANTED** in part and **DENIED** in part as follows:

1) Defendant's Motion to Strike (Doc. 19) is **DENIED**.

2) Defendant's Motion for a Hearing on Accuracy of Transcripts of Recorded Conversation (Doc. 21) is dismissed as **MOOT**.

3) Defendant's Motion for Discovery and Inspection of Physical Evidence and *Brady* Material (Doc. 23) is **GRANTED in part and DENIED in part.** All discovery pursuant to Fed. R. Crim. P. 16 will be released to defendant and all *Brady\Giglio* materials will be released to defendant no later than **seven days (7)** prior to the start of trial. Robert Mericle's grand jury testimony will also be released to defendant.

4) Defendant's Motion to Suppress (Doc. 25) is **DENIED**.

5) Defendant's Motion to Preserve and Produce Notes, Reports, and Evidence (Doc. 27) is dismissed as **MOOT**.

6) Defendant's Motion for a Bill of Particulars (Doc. 29) is **DENIED**.

7)         Defendant's Motion for Early Disclosure of *Jencks* Material (Doc. 31) is **GRANTED in part and DENIED in part**. All *Jencks* material will be provided to defendant no later than **seven (7) days** prior to the start of trial.

                                                     /s/ A. Richard Caputo  
                                                     A. Richard Caputo  
                                                     United States District Judge