# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATE OF AMERICA | |
| | NO. 3:10-CR-338 |
| v. | |
| | (JUDGE CAPUTO) |
| RAPHAEL MUSTO, | |
| Defendant. | |

## MEMORANDUM

Raphael Musto is charged in a Second Superseding Indictment with (1) Honest Services Wire Fraud; (2) Honest Services Mail Fraud and Mail Fraud; (3) Corrupt Receipt of Bribe/Reward for Official Action Concerning Programs Receiving Federal Funds; and, (4) False Statements to Government Agent. He has moved to continue the trial indefinitely because he maintains he is not competent to go to trial. A trial has been scheduled for January 13, 2014, and a competency hearing was scheduled and held on January 6, 2014. Mr. Musto contends he is both physically and mentally not competent to go to trial.

The Court appointed two experts to aid the Court in the consideration of this motion. K. Rajender Reddy, M.D., Professor of Medicine, Director of Hepatology and Medical Director of Liver Transplantation at the Hospital of the University of Pennsylvania, a liver expert, was asked to determine whether Mr. Musto's liver disease rendered him incompetent to go to trial. Susan E. Rushing, M.D., J.D., a forensic psychiatrist and assistant professor at the University of Pennsylvania Perelman School of Medicine, was asked to determine whether Mr. Musto suffered from a mental disease or defect which rendered him incompetent to go to trial   She was asked to follow 28 U.S.C. § 4241, et seq.   Both Dr.

Reddy and Dr. Rushing testified at the competency hearing.

Mr. Musto has submitted four expert reports from Cataldo Doria, M.D., a liver disease expert from Jefferson Medical College, and two reports from Richard Fischbein, M.D., a psychiatrist. Both Dr. Doria and Dr. Fischbein testified at the competency hearing.

The Government submitted a report of Ian R. Schreibman, M.D., a liver disease expert from Penn State Milton S. Hershey Medical Center. Dr. Schreibman was not called by the Government to testify at the competency hearing.

The determination of incompetency to stand trial for physical reasons is left to the discretion of the Court. *See, U.S. V. Schaffer*, 433 F.2d 928, 930 (5th Cir. 1970); *U.S. v. Gunter*, No. 12–394–4, 2013 WL 5942341 (E.D. Pa. Nov. 5, 2013). The determination of incompetency to stand trial for mental reasons is governed by statute; 28 U.S.C. §4241, et seq.

**A.     Physical Reasons**

In exercising discretion on the issue of physical competence to stand trial, the Court should consider (1) the medical evidence; (2) the defendant's activities at work or play or wherever — outside the courthouse; (3) the possible availability of measures to minimize the risk to the defendant's health in subjecting him to trial; (4) the temporary or permanent character of the physical problem; and, (5) the magnitude and seriousness, that is, the public's interest in prosecuting the case. *U.S. v. Gunter*, *id.*, at 1, citing *U.S. v. Doran*, 328 F.Supp. 1261 (S.D.N.Y. 1971).

I will consider each of these factors in turn.

**(1)    Medical Evidence**

Mr. Musto suffers from non-alcoholic cirrhosis of the liver, a thoracic aneurysm, fatigue, skin itch and insomnia. He also has other maladies, but the foregoing are those offered as rendering him incompetent to be tried.

(a)    **Liver Disease**.  The complications from liver disease are varices (esophageal bleeding), ascites (fluid in the abdomen), encephalopathy, and liver cancer.

(I)    **Varices** – Other than a reference to Dr. Jeffrey's 2011 engagement with Mr. Musto, there is no evidence of varices in Mr. Musto. Moreover, there is no evidence as to the extent of the condition in 2011, the treatment, if any, for same, and a prognosis.

(ii)    **Ascites** – Mr. Musto had an episode of ascites in 2011 which was successfully treated with diuretics. There is no evidence of a recurrence of ascites. Indeed, Dr. Doria testified he does not know if Mr. Musto has ascites. There is agreement between Dr. Doria and Dr. Reddy that Mr. Musto has edema (swelling - fluid retention) in his lower extremities which is a consequence of liver disease, but this condition is not the equivalent, and therefore, not as severe as ascites.

(iii)    **Encephalopathy** –   This is a condition caused by the accumulation of toxins which affect the brain. The toxins result from the liver malfunctioning due to its state of disease. There is testimony that this condition can cause or contribute to cognitive impairment. The difficulty here is that Dr. Reddy testified there is no diagnosis of encephalopathy, in essence, because it was never treated. Dr. Doria, on the other hand,

3

while not directly rendering a diagnosis of encephalopathy, testified that Mr. Musto's abnormal ammonia levels could contribute to his cognitive impairment. Dr. Doria confirmed it could be treated but that one of the drugs would probably not be tolerated by Mr. Musto's kidneys. He did not testify about the effectiveness of the other drug. Dr. Doria also testified that abnormally high ammonia levels do not necessarily mean there is cognitive impairment. Dr. Reddy agrees with Dr. Doria on this point. Dr. Fischbein testified about an encephalopathic "picture" in relation to a contributor to Mr. Musto's multifactorially caused cognitive impairment. Dr. Fischbein does not render a diagnosis of encephalopathy due to liver disease, and to the extent there is a suggestion he does, it is not supported by either Dr. Doria or Dr. Reddy.

It is also noted that Dr. Schreibman does not diagnose encephalopathy in Mr. Musto. He does find him cognitively deficient, but he states that he would so conclude apart from Mr. Musto's liver disease.

    (iv) **Liver Cancer** – There is no evidence that Mr. Musto has liver cancer.

    (v) **Other Considerations** – There was testimony regarding other impacts of liver disease, viz, elevated INR and low blood platelets. Dr. Doria testified that the trends of these measures indicate a worsening of the liver condition. Dr. Reddy testified that platelet count is not an indicator of the severity of liver disease. His testimony as to the significance of INR is much the same. Dr. Schreibman's report placed no significance on either of these measures. Indeed, he opined that according to measures used in the consideration of the extent of liver disease, Mr. Musto's was well "preserved". Here, Dr.

Schreibman mentioned the MELD score. MELD is an acronym which means Model for End-Stage Liver Disease. Dr. Reddy testified this was how the severity of liver disease was measured. The score ranges from 6 to 40 (40 being the worst). Mr. Musto's MELD score was 9 in June, 2012 and 9 in December, 2013. Dr. Doria does not agree that MELD score should be used to determine the severity of liver disease. Dr. Schreibman does, but his report indicates that sometimes it is not enough, and says Mr. Musto's evaluation should not stop at MELD. I place little weight on this position of Dr. Schreibman for the reason that he was not called to testify, and therefore was not subject to cross examination on this issue. He then indicates that Mr. Musto is cognitively impaired, but states he would so conclude independently from his liver disease.

        (b)    **Fatigue.**    Mr. Musto suffers from fatigue. While it could be the result of his liver disease, it could also be due to his age, cardiovascular disease, diabetes, lack of sleep and skin itching. The skin itching keeps him awake at times and then he gets tired. There is testimony that the skin itching may be due to his liver disease, but this is unclear. Moreover, Dr. Kim, who treats Mr. Musto for this condition, has diagnosed it as contact dermatitis and eczema due to "unspecified cause." (Doc. 127, Ex. J.)

Fatigue and the itching condition are offered as impediments to Mr. Musto's ability to go to trial. The fatigue is offered as a reason that he cannot adequately prepare for trial as well as perform effectively while at trial. In my view, these conditions do not rise to the level of rendering Mr. Musto incompetent to prepare for and go to trial.

There is also weight loss. This happens with liver disease because body muscle mass is robbed of protein which the diseased liver can no longer produce. Mr. Musto's weight is currently 169 pounds. In October, 2011, his weight was 165; in October, 2012, it

was 180; in September, 2013, it was 160; and, in December, 2013, it was 169. For this two-year period, drastic weight loss is not evident. There is no evidence that weight loss negatively impacts Mr. Musto's ability to go to trial.

© **Thoracic Aneurysm**. Mr. Musto has an aneurysm in his thoracic aorta. According to Joseph J. Stella, D.O., it is stable at 4.7 cm, and surgery is not indicated. Dr. Doria testified that stress (trial) could cause it to expand and burst which could be fatal. Given the stability of the aneurysm at present, and the inability to predict the future – indeed Dr. Doria does not categorically state, nor could he, that trial will cause the aneurysm to burst, this condition does not render Mr. Musto incompetent to be tried.

**(2) Defendant's Activities at Work or Play – Outside the Courthouse**

Mr. Musto's activities have slowed down the past two months. The testimony indicates this is mostly due to fatigue occasioned by the lack of sleep which in turn is occasioned by the itching skin condition. He did participate in the traditional family Christmas Eve dinner, but he left the table after about one hour and a half and ultimately went to bed before gifts were opened. The next day, he did not attend Christmas dinner. He does not drive anymore, and is driven to appointments and the like by family members. He no longer attends mass. He has recently fallen twice at his home, but in each instance has refused medical care.

Mr. Musto did sit through his competency hearing from 10:00 a.m. until 5:00 p.m. (with two breaks of 15 minutes and a lunch break of 45 minutes), though he appeared to doze off at times during this period. In December, 2013, he attended two evaluation sessions at the University of Pennsylvania Hospital in Philadelphia; one with Dr. K. Rajender Reddy, and one

with Dr. Susan E. Rushing. He was driven to these appointments, sat in the back seat of the car, had 20 minutes or so of conversation and dozed off at times during the trip to and from Philadelphia.

Mr. Musto also had an interview with a local newspaper reporter, at which he did not appear confused, but rather appeared intent on letting the reporter know about the unfairness in reporting he anticipated from the newspaper because at his first court appearance the paper printed a picture of him when he was heavier and healthier and that if he said he felt well, the paper would report he was faking the poor condition of his health. He appeared to be steadfast and in control during the ten or twelve minutes of the interview.

Mr. Musto no longer reads much but does watch television.

Mr. Musto's activities, while less than in the past, are not such that would render him incompetent to go to trial.

### (3) Possibility of Measures to Minimize the Risk to Defendant's Health in Subjecting him to Trial

It is possible to have a nurse or other medical personnel in the courtroom during a trial. Indeed, a nurse sat with Mr. Musto throughout the duration of the Competency Hearing.

In addition, a trial schedule can be fashioned on an ongoing basis that addresses any needs or deficits that Mr. Musto has which would be reasonably inconsistent with trial time. It is not a case as in *U.S. v. Gunter*, *supra*, where the defendant had four and one-half hours of kidney dialysis three days a week. In addition, appropriate breaks can be taken as needed and any other reasonable accommodations implemented.

### (4) Temporary or Permanent Character of the Physical Problem

Mr. Musto's liver disease has no cure, but it is fair to say that the evidence indicates

7

his condition is stable. This is according to Dr. Reddy and Dr. Schreibman. His MELD score has not changed in 18 months, and while Dr. Doria does not believe MELD score is true measure of the severity of liver disease, it is the standard to determine whether someone qualifies, by virtue of the severity of his or her liver disease, to receive a new liver. Mr. Musto's score is 9 on a range of 6 to 40, the latter being the most severe disease. Moreover, Dr. Reddy testified his score predicts a survival rate regarding his liver disease of 90% for two years. Dr. Doria testified his condition worsens and cites platelets, INR, ammonia levels and weight loss as trending negatively. Dr. Reddy disputes the significance of these measures, and did so convincingly. Consequently, I find that there is no evidence which overcomes Dr. Reddy's opinion.

The aneurysm is presently stable, and while permanent, does not render Mr. Musto incompetent to go to trial.

The skin itching may or may not be permanent. It is being treated. Even if it does not subside, it is not something that renders Mr. Musto incompetent to go to trial.

Lastly, Mr. Musto's fatigue may be permanent. Nevertheless, it is not something that renders him incompetent to go to trial. As noted, this can be addressed with scheduling, and accommodations during trial.

### (5) Magnitude and Seriousness of Case

There is a strong public interest in seeing this case prosecuted. Mr. Musto was a State Senator for many years and an acknowledged figure of considerable political power in this region of the Commonwealth of Pennsylvania, if not the entire Commonwealth. He is charged with taking a bribe, reward or kickback for political favor. Moreover, he was charged at a time when many local political figures were charged, convicted and sentenced

for similar crimes.  There is a public interest in seeing to it that those charged with crimes characterized as political corruption are tried, and there is surely a public interest in assuring that those with power and influence are governed by the same rules that apply to all.

**B.     Physical Reasons - Conclusion**

I find that Mr. Musto's physical condition does not render him incompetent to prepare for and go to trial.  My decision is based upon the foregoing analysis of the factors which have been determined to apply when considering the issue of incompetency for physical reasons.

**C.     Mental Reasons**

If a defendant is "presently . . . suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," he is mentally incompetent to stand trial.  18 U.S.C. § 4241(a).  "Section 4241 provides a mandatory process" by which the court conducts a "record-based judicial determination of competence in every case in which there is reason to doubt the defendant's competence to stand trial." *U.S. v. Haywood*, 155 F.3d 674, 680 (3d Cir. 1998).  At a competency hearing "conducted pursuant to the provisions of section 4247(d)" as proscribed by 18 U.S.C. § 4241©, "the government bears the burden of proving by a preponderance of the evidence that a defendant is competent to stand trial." *U.S. v. Askari,* 222 F. App'x 115, 119 (3d Cir. 2007)(citing *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir.1989)).

In this case, the Court received reports and heard testimony from two psychiatrists, Dr. Susan E. Rushing, the expert appointed by the Court, and Dr. Richard E. Fischbein, the

Defendant's expert, regarding Mr. Musto's mental competence to stand trial. Dr. Rushing opined that Mr. Musto is not mentally competent to stand trial. Dr. Rushing based her opinions and conclusions on an examination of Mr. Musto, Mr. Musto's performance on the Montreal Cognitive Assessment (MoCA), and an analysis of Mr. Musto's competence to stand trial according to the McGarry Scale elements, a standard used by psychiatrists in determining competency to stand trial. On the MoCA, Mr. Musto received a score of 23/30, indicating that Mr. Musto suffers from a psychiatric diagnosis of Mild Cognitive Impairment (MCI). A normal score on the MoCA is 26 or higher, and scores of less than 26 give rise to concerns of MCI or Dementia. Although Dr. Rushing testified that Mr. Musto's ability to understand the nature and consequences of the proceedings was mostly intact, his cognitive impairment resulted in moderate to severe impairment on elements assessing his ability to assist properly in his defense. Dr. Fischbein likewise testified that Mr. Musto was not competent because of his mild cognitive impairment.

Also in apparent accord with this conclusion, the Government's expert on liver disease, Dr. Schreibman noted in his August 29, 2012 report that after his exam of Mr. Musto, he was "most struck by the fact that [Mr. Musto] is unable to read any more than two paragraphs without getting distracted," that "Mr. Musto would not be able to withstand trial," and that he would "most likely have reached the same conclusion independently of his liver disease." (Jan. 6, 2014 Hearing, Def.'s Ex. 6).

**D.     Mental Reasons- Conclusion**

In light of the persuasive report and testimony of Dr. Rushing, its corroboration by Dr. Fischbein, and, to a lesser extent, Dr. Schreibman's observations, the Court finds, by a

10

preponderance of the evidence, that Mr. Musto is not mentally competent to stand trial.[1]

Upon a finding "that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the statute provides that "the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d). Although Defense counsel argued at the hearing that Mr. Musto should not be committed to the Attorney General in this case because his mental and physical conditions are practically untreatable and are not likely to improve, the Court is bound by the mandatory language of 18 U.S.C. § 4241(d) and will thus order that Mr. Musto be committed to the custody of the Attorney General. *See, e.g. U.S. v. Ferro*, 321 F.3d 756, 757 (8th Cir. 2003) ("[S]everal other circuits have considered whether § 4241(d) requires commitment to the Attorney General upon an initial finding of incompetency, and in all cases, the courts have concluded that the statute is mandatory. . . . These courts have additionally concluded that the permanency of the defendant's condition is not before the district court.").

An appropriate Order follows.

Date: January 7, 2014  /s/ A. Richard Caputo
 A. Richard Caputo
 United States District Judge

---

[1] At closing argument, the Government virtually conceded mental incompetency when counsel said he would not waste the Court's time trying to oppose the conclusions of Drs. Rushing, Fischbein, and Schreibman.

11